UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---

APRIL SCALISI, as custodian for her minor
children, and SCOTT McDONOUGH,

                         Plaintiffs,

        v.

JOE GRILLS, STEPHEN B. SWENSRUD,
ROBERT S. SALOMON, JR. AND FUND
ASSET MANAGEMENT, L.P.,

                        Defendants,

        -and-

MERRILL LYNCH FOCUS TWENTY FUND,
INC.,

                  Nominal Defendant.

04 CV 5513 (TCP)

---

**MEMORANDUM IN SUPPORT OF DEFENDANT FUND ASSET MANAGEMENT,
L.P.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019
(212) 878-8000

*Attorneys for Defendant Fund Asset
Management, L.P.*

NYA 818631.3

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL BACKGROUND .................................................................................. 3

    A.    The Parties ..................................................................................... 3

    B.    Plaintiffs' Claims against FAM .......................................................... 4

    C.    Procedural Background ..................................................................... 5

        1.    The Dismissal of Plaintiffs' Original Complaint ....................... 5

        2.    Plaintiffs' Demand and Formation of the Independent Investigation Committee ............................................................ 6

        3.    Completion of the Committee's Investigation and the Fund Board's Decision to Seek Dismissal of the Complaint ............... 7

        4.    Plaintiffs' Supplemental Demand and March 2006 Amended Complaint ................................................................................ 7

ARGUMENT ....................................................................................................... 8

I.    NO PRIVATE RIGHT OF ACTION EXISTS UNDER SECTION 36(a) OF THE ICA ............................................................................................................ 8

II.    PLAINTIFFS FAIL TO PLEAD FACTS DEMONSTRATING PERSONAL MISCONDUCT BY FAM IN VIOLATION OF SECTION 36(a) ................................. 12

III.    PLAINTIFFS' CLAIMS ARE TIME-BARRED .............................................. 16

IV.    PLAINTIFFS' COMMON LAW CLAIMS SHOULD BE DISMISSED ....................... 17

CONCLUSION ................................................................................................... 18

NYA 818631.3

# TABLE OF AUTHORITIES

## CASES

*Alexander v. Sandoval,*
532 U.S. 275 (2001)..................................................................................9, 10

*BFP v. Resolution Trust Corp.,*
511 U.S. 531 (1994)......................................................................................11

*Boland v. Engle,*
113 F.3d 706 (7th Cir. 1997) ........................................................................17

*Brady v. Allstate Life Ins. Co.,*
2004 WL 2218372 (N.D. Ill. Oct. 1, 2004).............................................13-14

*Brown v. Bullock,*
194 F. Supp. 207 (S.D.N.Y.), *aff'd*, 294 F.2d 415 (2d Cir. 1961) ..............11

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
511 U.S. 164 (1994)........................................................................................9

*Chamberlain v. Aberdeen Asset Mgmt., Ltd.,*
2005 WL 195520 (E.D.N.Y. Jan. 21, 2005),
*vacated,* 2005 WL 1378757 (E.D.N.Y. Apr. 12, 2005)....................8, 11, 12

*Davis v. Bailey,*
2005 WL 3527286 (D. Colo. Dec. 22, 2005)........................................8, 14

*In re Davis Selected Mut. Funds Litig.,*
2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005) ...............................................8

*DH2, Inc. v. Athanassiades,*
404 F. Supp. 2d 1083 (N.D. Ill. 2005) ...........................................................8

*In re Dreyfus Mut. Funds Fee Litig.,*
428 F. Supp. 2d 342 (W.D. Pa. 2005).............................................................9

*Dull v. Arch,*
2005 WL 1799270 (N.D. Ill. July 27, 2005)..................................................9

*In re Eaton Vance Mut. Funds Fee Litig.,*
380 F. Supp. 2d 222 (S.D.N.Y. 2005),
*appeal pending,* No. 05-6957 (2d Cir.)...........................................8, 11, 12

*In re Evergreen Mut. Funds Fee Litig.,*
423 F. Supp. 2d 249 (S.D.N.Y. 2006).............................................................8

ii

NYA 818631.3

*Fogel v. Chestnutt*,
  668 F.2d 100 (2d Cir. 1981), *cert. denied*, 459 U.S. 828 (1982) ................................ 11

*Forsythe v. Sun Life Fin., Inc.*,
  417 F. Supp. 2d 100 (D. Mass. 2006) ........................................................................... 8

*In re Franklin Mut. Funds Fee Litig.*,
  388 F. Supp. 2d 451 (D.N.J. 2005) ........................................................................... 9, 11

*In re Goldman Sachs Mut. Funds Fee Litig.*,
  2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ................................................................. 8

*Green v. Fund Asset Mgmt., L.P.*,
  19 F. Supp. 2d 227 (D.N.J. 1998) ............................................................................... 16

*Hamilton v. Allen*,
  396 F. Supp. 2d 545 (E.D. Pa. 2005) ........................................................................... 9

*Hanscome v. Perry*,
  542 A.2d 421 (Md. Ct. Spec. App. 1988) ................................................................... 16

*Jacobs v. Bremner*,
  378 F. Supp. 2d 861 (N.D. Ill. 2005) ........................................................................ 9, 13

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir. 1991) ......................................................................................... 3

*Ladzinski v. MEBA Pension Trust*,
  951 F. Supp. 570 (D. Md.), *aff'd*, 120 F.3d 261 (4th Cir. 1997) ............................... 16

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
  501 U.S. 350 (1991) ..................................................................................................... 17

*In re Lord Abbett Mut. Funds Fee Litig.*,
  407 F. Supp. 2d 616 (D.N.J. 2005) ............................................................................... 8

*McDonnell v. Allstate Life Ins. Co.*,
  2004 WL 2392169 (N.D. Ill. Oct. 25, 2004) .............................................................. 14

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003) ........................................................ 12-13, 14, 15

NYA 818631.3

*In re Merrill Lynch Focus Twenty Fund Inv. Co. Act Litig.*,
  218 F.R.D. 377 (E.D.N.Y. 2003),
  *aff'd sub nom. Scalisi v. Fund Asset Mgmt., L.P.*,
  380 F.3d 133 (2d Cir. 2004)........................................................................1, 6

*In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
434 F. Supp. 2d 233 (S.D.N.Y. 2006)..............................................................8

*Meyer v. Oppenheimer Mgmt. Corp.*,
  764 F.2d 76 (2d Cir. 1985)............................................................................11

*In re Mut. Funds Inv. Litig.*,
  384 F. Supp. 2d 845 (D. Md. 2005) ...............................................................9

*Mutchka v. Harris*,
  373 F. Supp. 2d 1021 (C.D. Cal. 2005) ........................................................9

*In re Nuveen Fund Litig.*,
  1996 WL 328006 (N.D. Ill. June 11, 1996) ................................................14

*Olmsted v. Pruco Life Ins. Co.*,
  283 F.3d 429 (2d Cir. 2002),
  *aff'g 134 F. Supp. 2d 508 (E.D.N.Y. 2000)* ..........................2, 9, 10, 11-12

*In re Oppenheimer Funds Fees Litig.*,
  419 F. Supp. 2d 593 (S.D.N.Y. 2006)............................................................8

*P. Stolz Family P'ship L.P. v. Daum*,
  355 F.3d 92 (2d Cir. 2004) ...........................................................................17

*Phoenix Four, Inc. v. Strategic Res. Corp.*,
  2006 WL 399396 (S.D.N.Y. Feb. 21, 2006)...........................................16, 17

*SEC v. Treadway*,
  430 F. Supp. 2d 293 (S.D.N.Y. 2006).........................................................14

*Scalisi v. Fund Asset Mgmt., L.P.*,
  380 F.3d 133 (2d Cir. 2004)........................................................................1, 6

*Stegall v. Ladner*,
  394 F. Supp. 2d 358 (D. Mass. 2005) ...........................................................9

*Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A*,
  834 A.2d 170 (Md. Ct. Spec. App. 2003),
  *cert. denied, 841 A.2d 340 (Md. 2004)*.....................................................16

iv

*Touche Ross & Co. v. Redington*,
   442 U.S. 560 (1979) ................................................................................9

*Transamerica Mortgage Advisors, Inc. v. Lewis*,
   444 U.S. 11 (1979) .................................................................................9

*Yameen v. Eaton Vance Distribs., Inc.*,
   394 F. Supp. 2d 350 (D. Mass. 2005) ...................................................8-9

## STATUTES AND RULES

15 U.S.C. § 80a-26(f)........................................................................9, 10

15 U.S.C. § 80a-27(i).........................................................................9, 10

15 U.S.C. § 80a-35........................................................................5, 11, 12

15 U.S.C. § 80a-35(a) ....................................................................... *passim*

15 U.S.C. § 80a-35(b)........................................................................10, 11

15 U.S.C. § 80a-41................................................................................10

Fed. R. Civ. P. 12(b)(6)..........................................................................1

Fed. R. Civ. P. 23.1.............................................................................1, 5

Md. Code Ann., Corps. & Ass'ns § 5-101 ............................................16

## OTHER AUTHORITIES

Hearings on S. 1659 Before the Senate Comm. on Banking and Currency,
   90th Cong., 1st Sess. 167 (1967) ...........................................................12

Investment Company Amendments Act of 1970,
   Pub. L. No. 91-547, 84 Stat. 1413 (1970).............................................11

NYA 818631.3

Defendant Fund Asset Management, L.P. ("FAM") submits this memorandum in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' First Amended Complaint ("Complaint").

## PRELIMINARY STATEMENT

Plaintiffs, two shareholders in the Merrill Lynch Focus Twenty Fund ("Fund"), bring this derivative action against the Fund's investment adviser, FAM, for investing some of the Fund's assets in Enron Corporation ("Enron"). Plaintiffs allege that because an affiliate of FAM, Merrill Lynch, Pierce, Fenner & Smith Incorporated, had an investment banking relationship with Enron, FAM had "special access" to adverse financial information about Enron, yet, nevertheless, caused the Fund to invest in Enron. Plaintiffs assert claims under Section 36(a) of the Investment Company Act of 1940 ("ICA") and common law.

This is not, of course, the first lawsuit Plaintiffs have filed against FAM arising out of the Fund's investment in Enron. This Court dismissed Plaintiffs' initial complaint because Plaintiffs failed to make a pre-suit demand on the Fund's Board of Directors pursuant to Fed. R. Civ. P. 23.1. *In re Merrill Lynch Focus Twenty Fund Inv. Co. Act Litig.*, 218 F.R.D. 377 (E.D.N.Y. 2003) (Platt, J.). The Second Circuit affirmed. *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133 (2d Cir. 2004). Following that decision, Plaintiffs did, finally, make a demand upon the Fund's Board. As explained in more detail in the Fund's contemporaneously filed motion to terminate the lawsuit ("Fund's Motion"), the Fund formed an Independent Investigation Committee which investigated Plaintiffs' claims and found that they lacked any merit, and recommended that the lawsuit be dismissed with prejudice. FAM fully joins in the Fund's Motion.

FAM files this motion to dismiss the claims against it for separate and additional reasons. Plaintiffs' current Complaint fails to state any claim against FAM for which relief can be granted. First, no private right of action exists under Section 36(a). That Section only allows the

Securities & Exchange Commission ("SEC") to bring an action against investment advisers for "breach of fiduciary duty involving personal misconduct." 15 U.S.C. § 80a-35(a). Since the Second Circuit's decision in *Olmsted v. Pruco Life Insurance Company*, 283 F.3d 429 (2d Cir. 2002), numerous courts throughout the country have refused to find that an implied private right of action exists under Section 36(a).

Second, even if a private right of action did exist under Section 36(a), Plaintiffs have failed to allege, as they must, facts showing that FAM engaged in any "personal misconduct" in connection with the Fund's investment in Enron. The Complaint nowhere explains, for example, how FAM, which receives a fee based upon a percentage of the Fund's net assets, would derive any personal gain by investing Fund assets in a company FAM allegedly knew would perform poorly. Nor does the complaint allege that FAM had any financial interest in Enron. For this reason, as well, Plaintiffs' Section 36(a) claim should be dismissed.

Finally, both Plaintiffs' Section 36(a) claim and their state law claims are barred by the applicable three-year statutes of limitations. The Fund invested in Enron in early 2001 and disclosed its investment in Enron in its May 31, 2001 semi-annual report. Plaintiffs did not file their Complaint in this case until December 17, 2004 – after more than three years had elapsed from the allegedly wrongful investment. The pendency of Plaintiffs' earlier, dismissed lawsuit did not toll the running of those statutes of limitations.

For all these reasons, as well as the reasons set forth in the Fund's Motion, the Complaint should be dismissed with prejudice.

## FACTUAL BACKGROUND

### A.    The Parties

Plaintiffs are shareholders of the Fund.   (Am. Compl. ¶ 13.)   Defendant FAM is a financial management and advisory company with its headquarters in Plainsboro, New Jersey. FAM serves as the Fund's investment adviser. (Am. Compl. ¶ 14.)  FAM is an indirect, wholly-owned subsidiary of Merrill Lynch & Co., Inc. ("ML & Co."), a global financial services holding company.  Defendants Joe Grills, Robert S. Salomon, Jr. and Stephen B. Swensrud are outside directors who served on the Fund Board's Independent Investigation Committee.  (Am. Compl. ¶¶ 15-17.)

The Fund is a Maryland corporation and is registered with the SEC pursuant to the ICA. (Am. Compl. ¶ 20.)[1]  The Fund is governed by its Board of Directors.  Currently, the Fund's Board has nine directors, eight of whom are "independent," *i.e.*, not employed by or otherwise affiliated with FAM or any of its corporate affiliates.  (Holland Decl. Ex. E, Original Compl. ¶¶ 23-24.)

The Fund is a non-diversified aggressive growth fund.  Its stated investment objective is long-term capital appreciation.  (Prospectus at 7.)  The Fund seeks to achieve its investment objective "by investing primarily in common stocks of approximately 20 companies that Fund

---

[1]    Shares of the Fund were first offered to the public through a Registration Statement which included a Prospectus and Statement of Additional Information that was filed with the SEC and declared effective on March 3, 2000 (hereinafter the "Prospectus" and "SAI").  Plaintiffs' Complaint repeatedly quotes statements from the Fund's Prospectus and SAI regarding FAM's selection of the Fund's investments, but fails to attach those documents.  (*See, e.g.*, Am. Compl. ¶¶ 1, 41-42.) In addition, the Complaint references the amount of the Fund's investment in Enron but fails to attach the Fund's shareholder reports reflecting that investment.  (*See* Am. Compl. ¶ 49.)  Those materials were filed with the SEC and are publicly available.  The Court may properly consider them on this motion to dismiss. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (documents legally required by, and publicly filed with, the SEC can be judicially noticed on a motion to dismiss).  Those documents are attached to the accompanying Declaration of Mark Holland, Esq., dated February 16, 2007 (the "Holland Decl.").  The Prospectus refers to the directors as "Trustees" of the Trust, but for simplicity's sake FAM will refer to them throughout this Memorandum as directors of the Fund.

3

management believes have strong earnings growth and capital appreciation potential." (*Id.*) The Prospectus states that the Fund may be appropriate for investors who are "willing to accept the risk that the value of [their] investment may decline in order to seek long-term capital appreciation." (*Id.* at 4.) The Fund's Prospectus warns that "[b]y concentrating in a smaller number of investments, the Fund's risk is increased because each investment has a greater effect on the Fund's performance." (*Id.* at 8.)

The Fund invested in Enron for approximately 6 months during 2001. (Holland Decl. Ex. C, 5/31/01 Semi-Annual Report at 11.) The Fund's May 31, 2001 semi-annual report shows that as of that date, the Fund held 610,000 shares of Enron, constituting 4.2% of the Fund's net assets. (*Id.*; *see* Am. Compl. ¶ 49.) Six months later, by November 30, 2001, the Fund no longer held any shares in Enron. (Holland Decl. Ex. D, 11/30/01 Annual Report at 14-15.)

**B.     Plaintiffs' Claims Against FAM**

Plaintiffs allege that the Fund's investment in Enron was inconsistent with the Fund's representations concerning how it would select companies in which to invest. Plaintiffs allege that certain executives of FAM's affiliate, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPF&S"),[2] were "actively abetting [Enron's] fraud and had numerous undisclosed material, irreconcilable conflicts by virtue of its lucrative investment banking relationship and by directly investing in, lending money to, acting as a placement agent for, and promoting to its high net worth clients" an Enron partnership called LJM2. (Am. Compl. ¶ 46.) Plaintiffs assert that because of FAM's "conflicted position," it had "special access" to material information about those Enron partnerships, and thus knew or should have known that "Enron's financial condition

_____

[2]     MLPF&S is a leading securities broker-dealer and investment bank with its headquarters in New York, New York and is also a separate, wholly-owned subsidiary of ML & Co. Although they are affiliates by virtue of their common ownership by ML & Co., FAM is entirely separate from MLPF&S. They have separate employees, separate offices, and there is no cross-ownership between them.

NYA 818631.3

was far weaker than known to the investment community in general." (Am. Compl. ¶ 47.) Plaintiffs also allege that because a private placement memorandum for LJM2 was circulated to certain FAM officers and that one such officer invested in LJM2, FAM had knowledge of Enron's fraud. (Am. Compl. ¶¶ 4, 27-30.) According to Plaintiffs. "[a]s a result of its conflicted, wasteful, improvident investment in the securities of Enron, the Fund incurred a material loss, while FAM, its parent, and its affiliates have reaped huge profits." (Am. Compl. ¶ 50.)

Plaintiffs allege that by causing the Fund to invest in Enron, FAM breached its fiduciary duty under Section 36(a) of the ICA. (Am. Compl. Claim I, ¶¶ 72-76.) Section 36(a) authorizes the SEC to bring an action against, among others, an investment adviser to a mutual fund for "a breach of fiduciary duty involving personal misconduct." 15 U.S.C. § 80a-35(a).[3] Plaintiffs also assert common law claims against FAM for breach of fiduciary duty, negligence, gross negligence, and negligent misrepresentation based on the same allegations. (Am. Compl. Claim I, ¶¶ 72-76, and Claim III, ¶¶ 82-86.)

**C.    Procedural Background**

1.    **The Dismissal of Plaintiffs' Original Complaint**

Plaintiff April Scalisi filed her original complaint on October 18, 2002. (*See* Holland Decl. Ex. E.)[4]   That complaint asserted claims under Section 36(a) and for common law negligence against FAM derivatively on behalf of the Fund regarding the Fund's investment in Enron. The complaint acknowledged that demand was required under Rule 23.1, but contended that demand was excused as futile because the Fund's directors received between $160,000 and

---

[3]       The text of Section 36 of the ICA is set forth in the statutory addendum to this memorandum.

[4]       Scalisi's complaint was later consolidated with an identical complaint filed by Plaintiff Felix Amsler.

NYA 818631.3

$260,000 in compensation for their services on boards of other fund boards managed by the same adviser, and thus were not independent.

On October 30, 2003, this Court granted Defendants' motion to dismiss the complaint on the ground that Plaintiffs' failure to make a demand was not excused as futile. *In re Merrill Lynch Focus Twenty Fund Inv. Co. Act Litig.*, 218 F.R.D. 377 (E.D.N.Y. 2003) (Platt, J.) ("*Focus Twenty Fund*").

Following dismissal, Plaintiffs did not make a demand. Rather, they appealed to the Second Circuit. On August 17, 2004, the Second Circuit affirmed this Court. *Scalisi v. Fund Asset Mgmt., L.P.*, 380 F.3d 133 (2d Cir. 2004). In so doing, the Second Circuit pointed out that Plaintiffs had not alleged any specific information concerning the directors' role in the decision to invest in Enron, and that Plaintiffs' general criticisms of the investment company industry "are neither specific to the [fund] directors nor to the purchase of the Enron stock at issue." *Id.* at 141. The Second Circuit therefore agreed with this Court's determination that demand was not excused as futile.

2.   **Plaintiffs' Demand and Formation of the Independent Investigation Committee**

Following the Second Circuit's decision, on August 31, 2004, Plaintiffs made a demand on the Fund's Board of Directors to bring a derivative suit against FAM on behalf of the Fund. (Am. Compl. ¶ 54.) Shortly thereafter, the Fund's Board formed an Independent Investigation Committee (the "Committee") to investigate Plaintiffs' claims. On November 24, 2004, the Fund's Board subsequently notified Plaintiffs that they had appointed independent directors Stephen B. Swensrud, Joe Grills and Robert S. Salomon, Jr. to the Committee to investigate Plaintiffs' claims and had instructed the Committee to report its findings and recommendations to the Board upon the completion of its review and investigation. (Am. Compl. ¶ 58.) On

6

December 17, 2004, well over three years after the Fund invested in Enron, Plaintiffs filed their complaint commencing the current action.

### 3. Completion of the Committee's Investigation and the Fund Board's Decision to Seek Dismissal of the Complaint

On May 23, 2005 the Committee completed its investigation and submitted its report and recommendation to the Fund's Board.[5] The Committee concluded that the Fund did not have a meritorious claim against FAM and recommended that the Fund's Board should direct the Fund's counsel to seek dismissal of the complaint with prejudice. At a June 1, 2005 meeting, the Fund's Board approved and accepted the Committee's report and recommendation. Based upon the Committee's report and recommendation, on October 31, 2005 the Fund served its motion to dismiss the complaint or in the alternative for summary judgment.

### 4. Plaintiffs' Supplemental Demand and March 2006 Amended Complaint

Plaintiffs responded by sending a letter on December 9, 2005 demanding that the Fund's Board take action against the Committee members for "engaging in a cover-up of FAM's wrongdoing." (Am. Compl. ¶ 63 and Ex. L.) The Board declined to do so. Plaintiffs then filed their Amended Complaint ("Complaint") on March 15, 2006, asserting the same claims against FAM and the Fund as did their earlier complaint and adding claims against the three directors on the Fund's Independent Investigation Committee for breach of fiduciary duty under Section 36(a) of the ICA and common law.[6]

---

[5] On March 2, 2005, FAM moved to dismiss Plaintiffs' then-existing complaint. Also on March 2, 2005, the Fund moved to stay the proceedings until June 7, 2005 to permit the Fund's Independent Investigation Committee to complete and report on their investigation. In accordance with this Court's rules, FAM's motion was served upon Plaintiffs, but the motion was not filed. The parties agreed that Plaintiffs need not respond to FAM's motion until this Court ruled on the Fund's motion to stay. As a result, no further briefing occurred on FAM's motion and FAM never filed its motion with this Court.

[6] On April 3, 2006, in accordance with this Court's rules, FAM served but did not file its motion to dismiss the current Complaint. Also on that date, the Fund served a supplemental memorandum in support of its motion to dismiss the Complaint.

(continued...)

# ARGUMENT

## I.

## NO PRIVATE RIGHT OF ACTION EXISTS UNDER SECTION 36(a) OF THE ICA

Plaintiffs' Section 36(a) claim -- their only federal claim -- should be dismissed because there is no private right of action under that Section. Section 36(a) authorizes the SEC to bring an action for "breach of fiduciary duty involving personal misconduct" with respect to investment companies. 15 U.S.C. § 80a-35(a). Section 36(a) does not grant any express right of action to private civil litigants. *Id.* Therefore, for Plaintiffs to have an actionable claim under this Section, this Court must find that an implied private right of action exists.

Numerous courts in this District, *see Chamberlain v. Aberdeen Asset Mgmt. Ltd.,* 2005 WL 195520 (E.D.N.Y. Jan. 21, 2005) (Johnson, J.),[7] the Southern District of New York,[8] and throughout the country[9] have held that no private right of action exists under Section 36(a).

---

(continued...)
Plaintiffs then requested discovery in connection with the Fund's motion. At an April 19, 2006 conference, this Court held that Plaintiffs could engage in limited discovery, including depositions of the defendant directors Swensrud, Salomon and Grills, and that FAM and the Fund should renew their motions to dismiss once that discovery was completed. Those depositions were completed on January 9, 2007.

[7]    The decision in *Chamberlain* later was vacated after a joint motion by both parties as a precondition to settlement. However, Judge Johnson stated that it did "not constitute a reconsideration of the merits of the case or a negation of the substance of the previously issued Order; rather, the Motion is granted simply in order to permit the parties to proceed to settlement." *Chamberlain v. Aberdeen Asset Mgmt., Ltd.,* 2005 WL 1378757, at *1 (E.D.N.Y. Apr. 12, 2005).

[8]    *In re Merrill Lynch Inv. Mgmt. Funds Sec. Litig.,* 434 F. Supp. 2d 233, 239-40 (S.D.N.Y. 2006) (Owen, J.); *In re Evergreen Mut. Funds Fee Litig.,* 423 F. Supp. 2d 249, 256-57 (S.D.N.Y. 2006) (Sweet, J.); *In re Oppenheimer Funds Fees Litig.,* 419 F. Supp. 2d 593, 595 (S.D.N.Y. 2006) (Rakoff, J.); *In re Goldman Sachs Mut. Funds Fee Litig.,* 2006 WL 126772, at *5 (S.D.N.Y. Jan. 17, 2006) (Buchwald, J.); *In re Eaton Vance Mut. Funds Fee Litig.,* 380 F. Supp. 2d 222 (S.D.N.Y. 2005) (Koeltl, J.), *appeal pending,* No. 05-6957 (2d Cir.); *In re Davis Selected Mut. Funds Litig.,* 2005 WL 2509732 (S.D.N.Y. Oct. 11, 2005) (Cedarbaum, J.).

[9]    *Forsythe v. Sun Life Fin., Inc.,* 417 F. Supp. 2d 100, 107-08 (D. Mass. 2006); *In re Lord Abbett Mut. Funds Fee Litig.,* 407 F. Supp. 2d 616, 631 (D.N.J. 2005); *Davis v. Bailey,* 2005 WL 3527286, at *3-5 (D. Colo. Dec. 22, 2005); *DH2, Inc. v. Athanassiades,* 404 F. Supp. 2d 1083, 1092 (N.D. Ill. 2005); *Yameen v. Eaton Vance Distribs., Inc.,* 394 F. Supp. 2d 350, 352 n.1 (D.

(continued   )

8

These courts relied on recent Supreme Court and Second Circuit precedent.  In *Alexander v. Sandoval*, the Supreme Court stated:

> The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. . . . Statutory intent on this latter point is determinative. . . .  Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.

532 U.S. 275, 286-87 (2001) (internal citations omitted) (finding that no implied right of action exists to enforce disparate-impact regulations promulgated under the Civil Rights Act of 1964).[10]

Applying the Supreme Court's rationale in *Sandoval*, the Second Circuit found in 2002 that no private right of action exists under Sections 26(f) and 27(i) of the ICA.  *Olmsted v. Pruco Life Ins. Co.*, 283 F.3d 429, 432 (2d Cir. 2002), *aff'g* 134 F. Supp. 2d 508 (E.D.N.Y. 2000) (Garaufis, J.).[11]  The Second Circuit explained that "[a] court must 'begin [its] search for Congress's intent with the text and structure' of the statute . . . and cannot ordinarily conclude that Congress intended to create a right of action when none was explicitly provided."  *Olmsted*,

---

(continued...)
Mass. 2005); *Hamilton v. Allen*, 396 F. Supp. 2d 545, 553-55 (E.D. Pa. 2005); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 367-72 (D. Mass. 2005); *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 342, 347-49 (W.D. Pa. 2005); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 464-67 (D.N.J. 2005); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 868-70 (D. Md. 2005); *Dull v. Arch*, 2005 WL 1799270, at \*2-3 (N.D. Ill. July 27, 2005); *Jacobs v. Bremner*, 378 F. Supp. 2d 861, 863-66 (N.D. Ill. 2005); *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1025-27 (C.D. Cal. 2005).

[10]  *Accord Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16 (1979) (holding that no implied private right of action for damages exists under Section 206 of the IAA); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 571, *cert. denied*, 443 U.S. 904 (1979) (no implied private right of action under Section 17(a) of the Securities Exchange Act of 1934).  *See also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164 (1994) (no implied private right of action for aiding and abetting violations of SEC Rule 10b-5).

[11]  Sections 26(f) and 27(i) provide that "[i]t shall be unlawful" to sell variable insurance contracts "unless the fees and charges deducted under the contract, in the aggregate, are reasonable in relation to the services rendered, the expenses expected to be incurred, and the risks assumed by the insurance company."  15 U.S.C. § 80a-26(f)(2)(A); *see* 15 U.S.C. § 80a-27(i)(2).  Between the time of this District Court's decision in *Olmsted* and the Second Circuit's affirmance, a new subsection (b) was added to Section 26, so what this District Court's opinion referred to as Section 26(e) became 26(f).  For sake of clarity, we refer to it throughout as Section 26(f).

9

283 F.3d at 432. Because "[n]o provision of the ICA explicitly provides for a private right of action for violations of either Section 26(f) or Section 27(i)," the Second Circuit concluded that "we must presume that Congress did not intend one." *Id.* The Second Circuit found this presumption was "strengthened" by the fact that Sections 26(f) and 27(i) "do not contain rights-creating language." *Id.* Rather,

> [t]he language of these sections only describes actions by insurance companies that are prohibited; it does not mention investors such as plaintiffs. "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'"

*Id.* at 433 (quoting *Sandoval*, 532 U.S. at 289) (internal citations omitted).

The Second Circuit also found it compelling that Congress had created an express right of action to challenge excessive management fees charged by mutual fund advisers under Section 36(b) of the ICA: "Congress's explicit provision of a private right of action to enforce one section of a statute suggests that omission of an explicit private right to enforce other sections was intentional." *Olmsted*, 283 F.3d at 433. The Second Circuit concluded that when Congress wanted to create a private damage remedy under the ICA, "it knew how to do so." *Id.* (citation omitted). The Second Circuit also noted that Section 42 of the ICA already provides for enforcement of all ICA provisions by the SEC, but not by private litigants. *Id.* The Second Circuit therefore concluded that the ICA's text "creates a strong presumption that Congress did not intend to create private rights of action for violations of Sections 26(f) and 27(i)," and affirmed Judge Garaufis' opinion. *Id.*

Since the Second Circuit's decision in *Olmsted*, every court to decide the issue has held that no private right of action exists under Section 36(a). (*See* cases cited *supra*.) Many of these courts found it compelling that Congress had created an express private right of action to challenge excessive management fees charged by mutual fund advisers under Section 36(b) of

10

the ICA, but did not create an express private right of action under Section 36(a) -- *the very same statutory section*.[12]   The fact that Congress simultaneously enacted a different fiduciary duty provision granting an express private right of action under subsection (b) — without extending the same remedy to subsection (a) — confirms that Congress did not intend a private remedy for Section 36(a).   Thus, in *Chamberlain* Judge Johnson concluded that "if Congress wished to create a private right of action for violations of Section 36(a), it could have done so, as it did for Section 36(b)." *Chamberlain*, 2005 WL 195520, at *3; *accord Eaton Vance*, 380 F. Supp. 2d at 232; *Franklin*, 388 F. Supp. 2d at 467 (noting that while Section 36(a) does not contain "rights-creating" language, "in sharp contrast . . . § 36(b) does").[13]

Prior to *Olmsted*, a number of courts had assumed that implied rights of action existed under Section 36(a) and other sections of the ICA.[14]   In *Olmsted*, however, the Second Circuit noted that those decisions were inconsistent with the analysis now mandated by the Supreme Court:   "Past decisions reflecting judicial willingness to 'make effective [statutory] purpose' in the context of implied rights of action belong to an 'ancien regime.'"   *Olmsted*, 283 F.3d at 434

---

[12]   When Congress amended Section 36 in 1970, it created two subsections relating to the fiduciary duties of investment advisers. Section 36(b) *expressly* grants mutual fund investors the right to bring an action in federal court to recover excessive fees charged to an investment company by its investment adviser and provides for a one-year statute of limitations. 15 U.S.C. § 80a-35(b). By contrast, in Section 36(a), Congress expressly stated only that "[t]he Commission is authorized to bring an action in the proper district court . . . alleging . . . a breach of fiduciary duty involving personal misconduct," and provided the Commission with a much longer five-year limitations period. 15 U.S.C. § 80a-35(a). *See* Investment Company Amendments Act of 1970, Pub. L. No. 91-547, 84 Stat. 1413 (1970).

[13]   *See also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 537 (1994) ("[i]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another") (citation omitted).

[14]   *See, e.g., Fogel v. Chestnutt*, 668 F.2d 100 (2d Cir. 1981) (finding an implied right of action under Section 36(a)), *cert. denied*, 459 U.S. 828 (1982); *Meyer v. Oppenheimer Mgmt. Corp.*, 764 F.2d 76, 88 (2d Cir. 1985) (finding an implied right of action under Section 15(f)). These decisions found their genesis in the 1960's (*see, e.g., Brown v. Bullock*, 194 F. Supp. 207 (S.D.N.Y.), *aff'd*, 294 F.2d 415 (2d Cir. 1961)).

11

(quoting *Sandoval*, 532 U.S. at 287 (internal quotation marks omitted)).  *Accord Chamberlain*, 2005 WL 195520, at \*4; *Eaton Vance*, 380 F. Supp. 2d at 233.

In sum, there is *no* express or implied private right of action under Section 36(a). Plaintiffs' claim for relief under that Section therefore should be dismissed.

## II.
### PLAINTIFFS FAIL TO PLEAD FACTS DEMONSTRATING PERSONAL MISCONDUCT BY FAM IN VIOLATION OF SECTION 36(a)

Even if this Court were to find that Section 36(a) provides for a private right of action, Plaintiffs' Section 36(a) claim still should be dismissed because the Complaint fails to allege any personal misconduct by FAM in connection with the Fund's investment in Enron.  An action under Section 36(a) requires an "alleg[ation] . . . [of an] act or practice constituting a breach of fiduciary duty <u>involving personal misconduct</u> in respect of any registered investment company for which such person so serves or acts . . . as . . . investment adviser . . . . "  15 U.S.C. § 80a-35(a) (emphasis added).[15]  Plaintiffs make no such allegation here.  They assert in conclusory fashion that FAM engaged in personal misconduct (*see* Am. Compl. ¶ 75), but fail to allege, as they must, any facts supporting their conclusion that FAM's investment of the Fund's assets in Enron somehow involved personal misconduct.    As courts have made clear, such conclusory allegations, by themselves, are insufficient to state a claim.   *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 253 (S.D.N.Y. 2003) (*"Merrill Lynch Research Reports"*) (granting motion to dismiss claims under the Securities Act

---

[15]     Before the 1970 amendments to Section 36, that statute required a showing of "gross misconduct or gross abuse of trust."  In 1970, Section 36 was amended to create the express right of action in subsection (b) for breach of fiduciary duty regarding receipt of advisory compensation, and former Section 36 was amended to substitute a "personal misconduct" standard for a "gross abuse of trust" standard and became Section 36(a).  *See* Point I *supra*.  By adding the limiting "personal misconduct" language Congress made clear it only intended the Commission to be able to bring a claim in "situations where directors and others have engaged in some <u>clearcut personal impropriety</u>."  Hearings on S. 1659 Before the Senate Comm. on Banking and Currency, 90th Cong., 1st Sess. 167 (1967) (emphasis added).

NYA 818631.3

of 1933 where the complaint failed to allege facts to support the plaintiff's conclusory allegation).

Courts have repeatedly dismissed Section 36(a) claims against investment advisers that fail to allege self-dealing for the adviser's personal gain. For example, in *Jacobs v. Bremner*, 378 F. Supp. 2d 861 (N.D. Ill. 2005), the plaintiff brought a Section 36(a) claim against the funds' adviser and directors, alleging that the defendants failed to ensure that the funds participated in class action settlements for which they were eligible. After holding that no private right of action exists under Section 36(a), the *Jacobs* court further held that the plaintiff's Section 36(a) claim failed because he did not sufficiently allege "personal misconduct" by the defendants. The *Jacobs* court noted that Section 36(a)'s legislative history "confirms rather than negat[es] Congress' primary concern with conflicts of interest, enrichment at the expense of investors and self-dealing" when it enacted Section 36(a), and that the statutory language would be "patently redundant" if "personal misconduct" were read "to encompass any general breach of a fiduciary duty." *Id.* at 867. Because Section 36(a) "require[s] some showing of self–dealing," the *Jacobs* court dismissed the plaintiff's claim which "advanced no such allegations, instead setting out a garden-variety fiduciary claim." *Id.*

Similarly, in *Brady v. Allstate Life Ins. Co.*, 2004 WL 2218372 (N.D. Ill. Oct. 1, 2004), the plaintiffs alleged that transfer restrictions imposed by Allstate on the investment options for their variable annuity contracts violated Section 36(a). The court noted that the types of misconduct covered by Section 36(a) "extend to personal misconduct evidenced by misfeasance or nonfeasance . . . as well as self-dealing and other examples of unjust enrichment." *Id.* at *2 (internal citations omitted). The court concluded that "[t]he alleged imposition of transfer restrictions and failure to effectuate an exchange request are not activities that fall within the meaning of personal misconduct" under Section 36(a), since "[t]hese actions do not constitute

NYA 818631.3

the type of self-dealing and grossly negligent behavior envisioned by Section 36(a)." *Id.* at *3. The court therefore granted Allstate's motion to dismiss the Section 36(a) claim.[16]

Here, Plaintiffs have not alleged a single fact showing that FAM's investment of Fund assets in Enron constituted "personal misconduct" <u>by FAM</u> as required under Section 36(a). Plaintiffs make the conclusory allegation that "[a]s a result of its conflicted, wasteful, improvident investment in the securities of Enron, the Fund incurred a material loss, while FAM, its parent, and its affiliates have reaped huge profits." (Am. Compl. ¶ 50.) However, the Complaint does not identify any way in which FAM stood to benefit -- let alone "reaped huge profits" -- from the Fund's "improvident" investment in Enron.

Indeed, FAM's purported motive to purchase Enron while MLPF&S allegedly helped Enron engineer fraudulent financial transactions "defies economic reason." *Merrill Lynch Research Reports*, 272 F. Supp. 2d at 263. In *Merrill Lynch Research Reports*, the plaintiffs alleged that MLIM, an adviser of Merrill Lynch mutual funds, invested the funds' assets in certain technology companies only to help MLPF&S obtain investment banking business from those companies, without regard to whether those companies were good investments for the funds. *Id.* at 263. The court pointed out that there was no allegation that MLIM received any investment banking fees, or that its compensation was based on any such fees. Rather, MLIM's advisory fees were based on a percentage of the funds' net assets, and so "if the Funds' assets

---

[16]     *Accord McDonnell v. Allstate Life Ins. Co.*, 2004 WL 2392169, at *2 n.1 (N.D. Ill. Oct. 25, 2004) (dismissing Section 36(a) claim regarding similar allegations about transfer restrictions since "[p]laintiff did not allege facts of Allstate's self-dealing or personal impropriety"). *See also Davis*, 2005 WL 3527286, at *5 n.1 (noting that even if Section 36(a) did create a private right of action, that claim would be dismissed for failure to allege any self-dealing). *Compare with SEC v. Treadway*, 430 F. Supp. 2d 293, 343 (S.D.N.Y. 2006) (finding that the SEC's allegations that defendants "plac[ed] their own interests . . . above the interests of the funds and their shareholders" constituted personal misconduct within the meaning of Section 36(a)); *In re Nuveen Fund Litig.*, 1996 WL 328006, at *11 (N.D. Ill. June 11, 1996) (denying motion to dismiss because "[p]laintiffs' allegations that the Advisor imposed the Rights Offerings for its own benefit at the expense of the Funds are precisely the type of self-dealing contemplated by Section 36(a)").

diminished, MLIM's advisory fees also declined." *Id.* at 263. MLIM therefore had every incentive to invest the funds' assets in companies that would do well, so as to increase the funds' assets and MLIM's advisory fees. Judge Pollack concluded that the plaintiffs' premise -- that MLIM disregarded whether the funds' investments would do well -- "contradicts the assumption" that MLIM was acting in its own self-interest. *Id.*

Here, too, the <u>only</u> "profits" FAM allegedly received are its advisory fees from managing the Fund. (*See, e.g.,* Am. Compl. ¶ 49.)[17]  The Complaint nowhere alleges any facts showing that, as a result of the Fund's investment in Enron, FAM received additional advisory fees or any other financial benefit. In fact, just the opposite is true: since FAM's advisory compensation is calculated as a percentage of the Fund's net assets, any loss by the Fund from the Enron investment would *decrease* FAM's "profits" from managing the Fund. Plaintiffs contend that FAM knew that Enron was concealing its true financial condition and yet deliberately invested the Fund's assets in Enron anyway. This flies in the face of FAM's obvious incentive to invest the Fund's assets in companies it believes will make money for the Fund, and thus increase FAM's advisory fees. Since FAM and the Fund's interests were aligned in investing in companies that would do well, the investment in Enron could not have placed FAM's own interests above those of the Fund and cannot constitute "personal misconduct" under Section 36(a).

Plaintiffs' allegations about wrongdoing by FAM's affiliates regarding an Enron partnership have no relevance to their claims here. (Am. Compl. ¶¶ 21-26, 31-38.) Plaintiffs have failed to explain how any of FAM's affiliates allegedly profited from the Fund's investment in Enron, let alone how the affiliates' alleged profits benefited FAM.

---

[17]    FAM did not act as the Fund's distributor, underwriter, transfer agent or administrator and thus did not receive fees for performing those functions. (*See, e.g.,* Holland Decl. Ex. A, Prospectus at 15, 17; Holland Decl. Ex. B, SAI at 19-20.)

Plaintiffs therefore have failed to plead any facts demonstrating how FAM personally benefited at the Fund's expense by causing the Fund to invest in Enron. For this reason as well, the Section 36(a) claim should be dismissed.

### III.
### PLAINTIFFS' CLAIMS ARE TIME-BARRED

Plaintiffs' claims under common law -- as well as their Section 36(a) claim -- should be dismissed as time-barred. The statute of limitations for claims under Section 36(a) is three years from the alleged violation. *See, e.g., Phoenix Four, Inc. v. Strategic Res. Corp.,* 2006 WL 399396, at *5 (S.D.N.Y. Feb. 21, 2006); *Green v. Fund Asset Mgmt., L.P.,* 19 F. Supp. 2d 227, 232 (D.N.J. 1998). Plaintiffs' common law claims for breach of fiduciary duty, negligence, gross negligence, and negligent misrepresentation also have a three-year statute of limitations under Maryland law.[18] *See Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A,* 834 A.2d 170, 172 (Md. Ct. Spec. App. 2003), *cert. denied,* 841 A.2d 340 (Md. 2004); *Hanscome v. Perry,* 542 A.2d 421, 425 (Md. Ct. Spec. App. 1988) (citing MD. CODE ANN., CORPS. & ASS'NS § 5-101); *Ladzinski v. MEBA Pension Trust,* 951 F. Supp. 570, 574 (D. Md.), *aff'd,* 120 F.3d 261 (4th Cir. 1997).

Here, the Fund's investment in Enron was first publicly disclosed in the Fund's May 31, 2001 semi-annual report.[19] Plaintiffs did not commence this lawsuit until December 17, 2004 – more than three years after the alleged act about which they complain.

---

[18]    The Fund is a Maryland corporation. (Am. Compl. ¶ 20; Holland Decl. Ex. B, SAI at 41.)

[19]    That report showed that as of that date, the Fund held 610,000 shares of Enron. (Holland Decl. Ex. C, 5/31/01 Semi-Annual Report at 11.) By the time of the Fund's November 30, 2001 annual report, the Fund did not hold any shares in Enron. (Holland Decl. Ex. D, 11/30/01 Annual Report at 14-15.)

The pendency of Plaintiffs' earlier lawsuit did not toll the applicable statute of limitations.[20]   As the United States Supreme Court has stated, "the purpose of the 3-year limitation is clearly to serve as a cutoff," and "tolling principles do not apply to that period" of repose.  *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).  The three-year period of repose "begins to run without interruption once the necessary triggering event has occurred" and once it expires, the right is no longer available.  *Sec. e.g., P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102 (2d Cir. 2004).  *Accord Phoenix Four*, 2006 WL 399396, at *6-7 (dismissing ICA claims filed more than three years after the alleged wrong as time-barred and holding that equitable tolling does not apply to the three-year statute of repose).  Thus, when this lawsuit was filed on December 17, 2004, more than three years had elapsed since the Fund invested in Enron.  Any claim based upon the Fund's investment in Enron stock therefore is time-barred.[21]

### IV.
### PLAINTIFFS' COMMON LAW CLAIMS SHOULD BE DISMISSED

Plaintiffs' common law claims also should be dismissed based upon the presumptions afforded the Fund's Board under the business judgment rule, as explained in the Fund's Motion.  FAM fully joins in that motion.

---

[20]   *See Boland v. Engle*, 113 F.3d 706, 715 (7th Cir. 1997) (affirming dismissal of the plaintiff's claims where the plaintiff chose to appeal the issue of whether demand was excused rather than make a demand).

[21]   As stated in the Fund's Motion, the Fund entered into an agreement with FAM tolling the statute of limitations as of August 31, 2004, the date of Plaintiffs' demand letter, but only for claims brought by the Fund <u>in its own name</u> – not by other persons such as Plaintiffs.  In addition, prior to August 31, 2004, more than three years had elapsed since the Fund's investment in Enron.  That tolling agreement does not save Plaintiffs' claims here.

17

## CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed in its entirety with prejudice.

Dated: February 16, 2007

CLIFFORD CHANCE US LLP

By: *Mark Holland*

Mark Holland (MH 6494)
Mary K. Dulka (MD 0013)
Margaret M. Snyder (MS 3647)
Dayna R. Cooper (DC 7611)
31 West 52nd Street
New York, New York 10019
(212) 878-8000

*Attorneys for Defendant Fund Asset
Management, L.P.*

18

NYA 818631.3

## <u>CERTIFICATE OF CAUSATION OF SERVICE</u>

   I hereby certify under penalty of perjury that on February 16, 2007, I caused a true copy of the attached document to be served upon the parties shown below:

### <u>HAND DELIVERY</u>

Joel C. Feffer LLP
Harwood Feffer LLP
488 Madison Avenue
New York, NY 10022

Scott W. Fisher, Esq.
Garwin, Gerstein & Fisher LLP
1501 Broadway, Room 1416
New York, NY 10036

### <u>FED EX DELIVERY</u>

James A. Dunbar, Esq.
Venable LLP
210 Allegheny Avenue
Towson, MD 21285-5517

Christopher C. Chang, Esq.
140 Broadway, 46th Floor
New York, NY 10005

Dated: New York, New York
   February 16, 2007

                   _____
                      Damien A. Morris

NYB 1552359.1

## **STATUTORY ADDENDUM**

## INVESTMENT COMPANY ACT OF 1940

### Breach of Fiduciary Duty

**Sec. 36.**            (a) The Commission is authorized to bring an action in the proper district court of the United States, or in the United States court of any territory or other place subject to the jurisdiction of the United States alleging that a person serving or acting in one or more of the following capacities has engaged within five years of the commencement of the action or is about to engage in any act or practice constituting a breach of fiduciary duty involving personal misconduct in respect of any registered investment company for which such person so serves or acts—

> (1)    as officer, director, member of any advisory board, investment adviser, or depositor; or

> (2)    as principal underwriter, if such registered company is an open-end company, unit investment trust, or face-amount certificate company.

If such allegations are established, the court may enjoin such persons from acting in any or all such capacities either permanently or temporarily and award such injunctive or other relief against such person as may be reasonable and appropriate in the circumstances, having due regard to the protection of investors and to the effectuation of the policies declared in section 1(b) of this Act.

(b)    For the purposes of this subsection, the investment adviser of a registered investment company shall be deemed to have a fiduciary duty with respect to the receipt of compensation for services, or of payments of a material nature, paid by such registered investment company, or by the security holders thereof, to such investment adviser or any affiliated person of such investment adviser. An action may be brought under this subsection by the Commission, or by a security holder of such registered investment company on behalf of such company, against such investment adviser, or any affiliated person of such investment adviser, or any other person enumerated in subsection (a) of this section who has a fiduciary duty concerning such compensation or payments, for breach of fiduciary duty in respect of such compensation or payments paid by such registered investment company or by the security holders thereof to such investment adviser or person. With respect to any such action the following provisions shall apply:

> (1)    It shall not be necessary to allege or prove that any defendant engaged in personal misconduct, and the plaintiff shall have the burden of proving a breach of fiduciary duty.

> (2)    In any such action approval by the board of directors of such investment company of such compensation or payments, or of contracts or other arrangements providing for such compensation or payments, and ratification or approval of such compensation or payments, or of contracts or other arrangements providing for such compensation or

payments, by the shareholders of such investment company, shall be given such consideration by the court as is deemed appropriate under all the circumstances.

(3)     No such action shall be brought or maintained against any person other than the recipient of such compensation or payments, and no damages or other relief shall be granted against any person other than the recipient of such compensation or payments. No award of damages shall be recoverable for any period prior to one year before the action was instituted.  Any award of damages against such recipient shall be limited to the actual damages resulting from the breach of fiduciary duty and shall in no event exceed the amount of compensation or payments received from such investment company, or the security holders thereof, by such recipient.

(4)     This subsection shall not apply to compensation or payments made in connection with transactions subject to [section 17 of this Act], or rules, regulations, or orders thereunder, or to sales loads for the acquisition of any security issued by a registered investment company.

(5)     Any action pursuant to this subsection may be brought only in an appropriate district court of the United States.

(6)     No finding by a court with respect to a breach of fiduciary duty under this subsection shall be made a basis (A) for a finding of a violation of this title for the purposes of [sections 9 and 49 of this Act, section 15 of the Securities Exchange Act of 1934, or section 203 of the Investment Advisers Act], or (B) for an injunction to prohibit any person from serving in any of the capacities enumerated in subsection (a) of this section.

(c)     For the purposes of subsections (a) and (b) of this section, the term "investment adviser" includes a corporate or other trustee performing the functions of an investment adviser.